UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD SANTANA,

      Plaintiff,

v.                                                   Case No:   2:16-cv-190-FtM-99MRM

THE DUKE, LLC and FABIO
BONIFACIO,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**[1]

     This cause comes before the Court on Plaintiff's Motion for Final Default Judgment

(Doc. 46) against Defendants The Duke, LLC and Fabio Bonifacio filed on December 5, 2016.

For the reasons explained below, the Undersigned recommends that Plaintiff's Motion be

granted in part and denied in part.

**I.**     **Background**

     Plaintiff, proceeding *pro se*, initiated the present action against Defendants The Duke,

LLC and Fabio Bonifacio under the Fair Labor Standards Act ("FLSA") on March 11, 2016.

Defendants filed an answer (Doc. 10) on April 11, 2016.  On May 6, 2016, Plaintiff filed an

Amended Motion for Leave to Amend Complaint.  (Doc. 19).  Plaintiff requested that the Court

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

allow him to amend his Complaint to add five additional counts.  (*Id.* at 1 ¶ 2).  Plaintiff argued that amending his Complaint would allow him to "clarify and fully set forth his causes of action against Defendants."  (*Id.*).  Defendants opposed the relief requested (*id.* at 3), but did not file a written opposition.  On May 31, 2016, the Court granted Plaintiff's Motion.  ([Doc. 23](Doc. 23)).  Plaintiff's First Amended Complaint and Demand for Jury Trial ([Doc. 25](Doc. 25)) was docketed the same day.  Plaintiff's First Amended Complaint asserts seven counts against Defendants—FLSA Minimum Wage Violations (Count 1), FLSA Retaliation (Count 2), Florida Minimum Wage Violations (Count 3), Florida Retaliation Violations (Count 4), Defamation (Count 5), False Imprisonment (Count 6), and False Arrest (Count 7).

Additionally, on May 31, 2016, Donna M. Flammang and Martin A. Nestares of the law firm of Brennan, Manna & Diamond, P.L. filed a motion to withdraw as counsel for Defendants. ([Doc. 22](Doc. 22)).  On June 3, 2016, the Court granted the Motion to Withdraw by Brennan, Manna & Diamond, P.L. as Counsel for Defendants, The Duke, LLC d/b/a Fabio Trattoria Ristorante and Fabio Bonifacio ([Doc. 22](Doc. 22)).  ([Doc. 27 at 3](Doc. 27 at 3) ¶ 1).

In granting the Motion to Withdraw, the June 3, 2016 Order specified that Defendant Fabio Bonifacio was permitted thirty (30) days from the date of the Order to secure new counsel and have counsel file a notice of appearance, or to notify the Court of his intention to proceed *pro se*.  (*Id.* at 4).  The Court warned Defendant Fabio Bonifacio that failure to have new counsel file a notice of appearance, or to notify the Court of his intent to proceed *pro se*, would cause the Court to recommend that a default be entered against him.  (*Id.*).

Similarly, the Court permitted Defendant The Duke, LLC to have thirty (30) days from the date of the Court's Order to secure new counsel and have counsel file a notice of appearance.

(*Id.* at ¶ 5).  The Court warned that it would recommend that a default be entered against The Duke, LLC if new counsel failed to file a notice of appearance.  (*Id.* at 4-5 ¶ 5).

Additionally, the Court ordered both Fabio Bonifacio and The Duke, LLC to file a response to Plaintiff's First Amended Complaint.  (*Id.*).  The Court further warned Defendants that failure to file a response to Plaintiff's First Amended Complaint was grounds for the Court to recommend that a default be entered.  (*Id.*).

On July 11, 2016, because Defendants Fabio Bonifacio and The Duke, LLC had failed to notify the Court as required by the June 3, 2016 Order and had failed to file a response to Plaintiff's Amended Complaint, the Court ordered Defendants to show good cause for their failure to comply with the Court's June 3, 2016 Order.  (Doc. 31 at 2).

On August 9, 2016, the Court entered an Order (Doc. 36) concerning an email sent by Fabio Bonifacio on August 3, 2016, which the Court construed as Defendants' Response to the Court's Order to Show Cause (Doc. 31).  In that Response, Mr. Bonifacio stated that he had returned to Italy for a health issue.  (Doc. 35 at 1).  The Court noted at that time, however, that Mr. Bonifacio and The Duke, LLC still had not complied with the Court's June 3, 2016 Order regarding new counsel, nor had either Defendant responded to Plaintiff's First Amended Complaint.  (Doc. 36 at 1).  Nevertheless, based on Defendants' attempted Response to the Order to Show Cause (Doc. 35), the Court allowed Mr. Bonifacio and The Duke, LLC one final opportunity to comply with the Court's Orders.  (Doc. 36 at 1).  The Court ordered that no later than September 12, 2016, Fabio Bonifacio must secure new counsel and have counsel file a notice of appearance, or he must notify the Court through an appropriate Court filing that he intends to proceed *pro se*.  (*Id.* at 2 ¶ 1).  Further, the Court ordered that no later than September 12, 2016, The Duke, LLC must secure new counsel and have counsel file a notice of appearance.

(*Id. ¶* 2).  Moreover, the Court ordered that no later than September 12, 2016, both Fabio Bonifacio and The Duke, LLC must file a response to Plaintiff's First Amended Complaint.  (*Id.* at ¶ 3).  The Court warned that failure to comply with its Order would cause the Court to recommend that defaults be entered against Defendants.  (*Id.* at ¶ 4).

On August 16, 2016, the Court entered an Order (Doc. 38) concerning an additional email Fabio Bonifacio sent to the Undersigned's chambers email account on August 10, 2016. The Court suspected that Fabio Bonifacio may have attempted – by way of that email – to "answer" the Complaint.  (*Id.* at n.1).  The Court, however, did not construe the email to be a proper answer to Plaintiff's First Amended Complaint, nor did it construe the email as requiring any further action by the Court.  (*Id.* at 1).  The Order provided instructions to Mr. Bonifacio about proceeding *pro se* and further directed Mr. Bonifacio to refrain from sending further emails.  (*Id.* at 1-3).  The Court also noted that Mr. Bonifacio had not yet complied with the Court's August 9, 2016 Order (Doc. 36).  (Doc. 38 at ¶ 4).  The Court reminded Mr. Bonifacio that he must comply with the August 9, 2016 Order no later than September 12, 2016 and that failure to do so would cause the Court to recommend that defaults be entered against Defendants. (*Id.*).

Ultimately, neither of the Defendants complied with the Court's June 3, 2016 and August 9, 2016 Orders by filing a notice.  Moreover, neither of the Defendants filed a response to Plaintiff's First Amended Complaint.  As a result, on September 21, 2016, the Undersigned recommended that that the Clerk of Court be directed to enter defaults against Defendants The Duke, LLC and Fabio Bonifacio for failure to comply with the Court's Orders.  (Doc. 41 at 4).

On October 14, 2016, the Honorable Sheri Polster Chappell entered an Order accepting and adopting the Report and Recommendation.  (Doc. 42).  The Court ordered that a default be

entered against both Defendants.  (*Id.* at 3).  The Court, however, reserved its ruling on final

default judgment.  (*Id.*).  The Court stated that "[t]he issue of default final judgment will be set

by separate order of the Magistrate Judge who will conduct whatever proceedings are required to

render a Report and Recommendation on damages, attorney's fees, and costs." (*Id.*).

On December 5, 2016, Plaintiff filed his Motion for Final Default Judgment (Doc. 46).

The Undersigned conducted an evidentiary hearing on Plaintiff's Motion on January 24, 2017.  A

transcript of the proceedings is filed with the Court.  (Doc. 55).  This matter is ripe for review.

## II.    Legal Standard

The Court may enter a default judgment against a properly served defendant who fails to

defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2).  *Cohan v.*

*Sparkle Two, LLC*, 309 F.R.D. 665, 666 (M.D. Fla. 2015); *see also Directv, Inc. v. Griffin*, 290

F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).  The effect of the entry of a default is that all factual

allegations in the complaint are taken as true, save for the amount of unspecified damages.

*Cohan*, 309 F.R.D. at 666 (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)).

"[I]f liability is well-pled in the complaint, it is established by the entry of a default." *Id.*

Default judgment, however, may only be entered "if the factual allegations of the

complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default

judgment." *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th

Cir. 1975)).[2]  While the Court "must accept well-pled facts as true, the court is not required to

accept a plaintiff's legal conclusions."  *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-

2033-ORL-22-KRS, 2009 WL 4349806, at *2 (M.D. Fla. Nov. 24, 2009) (citing *Ashcroft v.*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh
Circuit Court of Appeals adopted as binding precedent all the decisions of the former Fifth
Circuit handed down prior to the close of business on September 30, 1981.

*Iqbal*, 556 U.S. 662, 678 (2009)).  Defendants are not held to admit facts that are not well-pled or to admit conclusions of law.  *Nishimatsu*, 515 F.2d at 1206.

To be well-pled, a complaint does not need detailed factual allegations, but a complaint must provide the grounds for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. 678.  This standard – derived from motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) – is "equally applicable to a motion for default judgment."  *Cohan*, 309 F.R.D. at 667.  Thus, a complaint requires more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678.  A complaint will not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* "The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *De Lotta*, 2009 WL 4349806, at *2 (quoting *Twombly*, 550 U.S. at 570).

Once liability is established, federal courts then address the terms of the judgment. *Cohan*, 309 F.R.D. at 667.  "A default judgment must not differ in kind from or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Moreover, "[i]f unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise."  *Cohan*, 390 F.R.D. at 667 (citing Fed. R. Civ. P. 55(b)(1)-(2)).  Pursuant to Rule 55(b)(2), "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).  "The court has 'an obligation to assure that there is a legitimate basis for any damage award it enters, and to assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond.'"  *Lofrisco v. Gulf Coast Health Care*, No. 8:13-cv-3159-T-36MAP, 2014 WL 4674323, at *1 (M.D. Fla. Sept. 15, 2014) (quoting *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003)).  Well-pled allegations as to

damages, however, are also admitted by a default." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)).

## III.   Default Judgment

The Undersigned evaluates Plaintiff's claims and damages in turn below.

### A.      FLSA Minimum Wage Violation (Count 1)

In Count 1 of his First Amended Complaint, Plaintiff alleges FLSA minimum wage violations pursuant to 29 U.S.C. § 206.  (Doc. 25 at 13).  To allege a *prima facie* claim for FLSA Minimum Wage Violations, Plaintiff must show that:  (1) Plaintiff was an employee of Defendants, (2) Defendants were an enterprise engaged in commerce or in the production of goods for commerce, and (3) Defendants failed to pay Plaintiff the minimum wage required by law.  *See* 29 U.S.C. § 206(a); *see also* Eleventh Circuit Pattern Jury Instructions-Civil 4.14 (2013).

#### 1.      Whether Plaintiff was an employee of Defendants

An "employee" is "any individual employed by an employer."  29 U.S.C. § 203(e)(1); *see also Sanchez v. Grundy Pizza, Inc.*, No. 6:16-cv-596-ORL-31GJK, 2017 WL 693348, at *3 (M.D. Fla. Feb. 2, 2017), *report and recommendation adopted*, No. 6:16-cv-596-ORL-31GJK, 2017 WL 680066 (M.D. Fla. Feb. 21, 2017).  An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Moreover, a covered employee "may file suit directly against an employer that fails to pay him the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment.'"  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986).

Here, Plaintiff alleges that he worked as host and/or server at the Defendants' restaurant, Fabio Trattoria Ristorante.  (Doc. 25 at ¶ 16).  Plaintiff further alleges that he worked in that position at Defendants' restaurant from February 3, 2016 through March 6, 2016.  (*Id.* at ¶ 27).  Based on these allegations, the Undersigned finds Plaintiff has pled sufficient facts demonstrating that he was an employee at Defendants' restaurant.  *See* 29 U.S.C. § 203(e)(1); *Josendis*, 662 F.3d at 1298.

Additionally, Plaintiff alleges that The Duke, LLC is the business entity for the restaurant at which Plaintiff worked as a host/server.  (*See* Doc. 25 at ¶¶ 13-16).  This allegation is sufficient to establish that The Duke, LLC was Plaintiff's employer.  *See* 29 U.S.C. § 203(d); *Josendis*, 662 F.3d at 1298.

Further, Plaintiff alleges that Defendant Fabio Bonifacio is the owner of the restaurant and that he exercised "sufficient control of The Duke, LLC's day to day operations to be considered an employer of Plaintiff and those similarly situated under the FLSA."  (Doc. 25 at ¶ 16).  Specifically, Plaintiff states that Fabio Bonifacio was "actively involved in managing The Duke, LLC's operations" by giving orders and disciplining employees.  (*Id.* at ¶ 17).  The Undersigned finds that these allegations are sufficient to establish that Fabio Bonifacio (1) acted on behalf of the employer and (2) asserted control over conditions of Plaintiff's employment such that he is also considered an employer of Plaintiff.  *See Josendis*, 662 F.3d at 1298; 29 U.S.C. § 203(d).

Upon review, Plaintiff has adequately alleged that he worked as an employee for Defendants.  (Doc. 25 at ¶¶ 16, 27).  Stated differently, Plaintiff has adequately alleged that Defendants The Duke, LLC and Fabio Bonifacio were his employers.  *See Josendis*, 662 F.3d at

1298; 29 U.S.C. § 203(d).  Furthermore, due to Defendants' default, these allegations are accepted as true.  *See Cohan*, 309 F.R.D. at 666.

Moreover, the Eleventh Circuit has stated that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Patel v. Wargo*, 803 F.2d 633, 637-38 (11th Cir. 1986) (internal quotation marks omitted).  Here, both The Duke, LLC and Fabio Bonifacio are jointly and several liable for any damages under the FLSA because both Defendants are Plaintiff's employers.  *See id.*

### 2. Whether Defendants are an enterprise engaged in commerce or in the production of goods for commerce

The statute defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and "whose annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. § 203(s)(1)(A).

Here, Plaintiff specifically alleges that Defendants have two or more employees that "handled, sold, or otherwise worked on good or materials that have been moved in or produced in commerce (e.g., wine, beer, ketchup, napkins, salt, pepper, etc.)."  (Doc. 25 at ¶ 18).  Moreover, Plaintiff alleges that Defendants' gross annual income exceeds $500,000.00.  (*Id.*).  Based on these allegations, the Undersigned finds that Plaintiff has sufficiently alleged that Defendants were an enterprise engaged in commerce or in the production of goods for commerce.  *See* 29 U.S.C. § 206(a).  This factor is accepted as true by virtue of Defendants' default.  *See Cohan*, 309 F.R.D. at 666.

### 3. Whether Defendants failed to pay Plaintiff the minimum wage required by law

The question becomes, then, whether Defendants failed to pay Plaintiff the minimum wage required by law.  The FLSA requires employers to pay employees at least the federal or state minimum wage, whichever is greater, for every hour worked.  29 U.S.C. §§ 206, 218(a); *Bennett v. JDC Ventures, LLC*, No. 2:16-CV-649-FTM-99CM, 2017 WL 894624, at *2 (M.D. Fla. Mar. 7, 2017).  During the relevant period, the federal minimum wage was $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  The Florida minimum wage in 2016 was $8.05 per hour.  *Bennett*, 2017 WL 894624, at *2.  Plaintiff seeks damages for various alleged violations of the FLSA minimum wage provisions.  The Undersigned addresses each of Plaintiff's claims below.

### i. Notice Violations Pursuant to 29 U.S.C. § 203(m) for Tipped Employees

Plaintiff alleges that he was a "tipped employee."  (Doc. 25 at ¶ 64).  A "tipped employee" is an employee that "customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).  The FLSA allows tipped employees to be paid less than the general minimum wage.  29 U.S.C. § 203(m).  Under the FLSA, a tipped employee may be paid $2.13 per hour as long as the tipped employee's tips "make up the difference between the $2.13 minimum wage and the general minimum wage."  *Anguelov v. Event Parking, Inc.*, No. 2:16-cv-273-FTM-29CM, 2017 WL 1361526, at *1 (M.D. Fla. Apr. 14, 2017) (citing *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015)).  In Florida, however, "Employers may credit towards satisfaction of the Minimum Wage tips up to the amount of the allowable FLSA tip credit in 2003."  Fla. Const. art. X, § 24.  The tip credit is the difference between the Florida minimum wage and the required direct wage.  The 2003 FLSA tip credit is $3.02 per hour.  *See* U.S. Dep't. of Labor, Wage and Hour Div., *Minimum Wages for Tipped*

*Employees*, (Jan. 1, 2017), https://www.dol.gov/whd/state/tipped.htm#Florida.  In 2016, the difference between the Florida minimum wage and the tip credit equaled $5.03 per hour ($8.05 - $3.02 = $5.03).  Accordingly, during the time Plaintiff was an employee of Defendants in 2016, Plaintiff must have been paid at least $5.03 per hour in direct wages.  Additionally, the tips Plaintiff received must have made up the difference between $5.03 per hour and the required Florida minimum wage of $8.05 per hour.  *See Anguelov*, 2017 WL 1361526, at *1.

Employers wishing to apply a tip credit to an employee's minimum wage must comply with 29 U.S.C. § 203(m).  29 U.S.C. § 203(m) requires an employer to give notice to employees that it is applying a tip credit or using a tip pool.  *See Bennett*, 2017 WL 894624, at *2.[3]  "[A]n employer who fails to provide information required by Section 203(m) of the FLSA regarding the tip-credit and use of tip pools, cannot use the tip-credit provision and therefore must pay the tipped employee at least the minimum wage, and allow the employee to keep all tips received." *Bennett*, 2017 WL 894624, at *2 (citing 29 U.S.C. § 203(m)).

In this instance, Plaintiff alleges that he was receiving $5.03 per hour.  (Doc. 25 at ¶ 72(d)).  Plaintiff alleges, however, that "Defendants did not provide Plaintiff with notification of the tipped minimum wage or tip credit provisions of the FLSA or their intent to apply a 'tip credit' to Plaintiff's wages."  (*Id.* at ¶ 72(c)).  Additionally, Plaintiff alleges that he "was not given adequate notice of the tip credit provisions of the FLSA."  (*Id.*).  Based on these allegations, the Undersigned finds that Plaintiff has adequately alleged that Defendants failed to provide notice pursuant to 29 U.S.C. § 203(m).  Furthermore, because Defendants failed to provide the notice required by 29 U.S.C. § 203(m) regarding the tip-credit, Defendants cannot

---

[3] A tip pool is "the pooling of tips among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m).

use the tip-credit provision and, therefore, must have paid Plaintiff at least the minimum wage and also allowed Plaintiff to keep all tips received.  *See Bennett*, 2017 WL 894624, at *2. Liability on this ground is established by Defendants' default.  *See Cohan*, 309 F.R.D. at 666.

Turning to damages, Plaintiff seeks $364.66 for Defendants' notice violations pursuant to 29 U.S.C. § 203(m).  (Doc. 46 at 4 ¶ 5).  As stated above, Defendants must have paid Plaintiff at least the minimum wage required by law due to their failure to provide notice pursuant to 29 U.S.C. § 203(m).  *See Bennett*, 2017 WL 894624, at *2.  In 2016, the Florida minimum wage was $8.05.  *Id.*  At the evidentiary hearing, Plaintiff submitted his final paycheck, which was admitted into evidence as Exhibit 3.  (*See* Doc. 54-4).  The paycheck indicates that Plaintiff was paid $5.03 per hour.  (*Id.*).  The difference between what Plaintiff was paid and the Florida minimum wage is $3.02 per hour.  Thus, Plaintiff is due $3.02 per hour for all hours worked at the reduced wage.  Plaintiff's paycheck indicates that he worked 120.75 hours.  (*Id.*).  The total after multiplying $3.02 per hour times 120.75 hours is $364.66.

Upon review, based on Plaintiff's testimony and the evidence presented at the hearing, the Undersigned finds that Plaintiff has demonstrated by a preponderance of the evidence that he incurred **$364.66** in damages due to Defendants' failure to comply with the notice provisions of 29 U.S.C. § 203(m).

### ii.    *Failure to Allow Plaintiff to Retain All Tips Received*

The Undersigned next addresses Plaintiff's contention that "Defendants did not allow Plaintiff to retain all of the tips and/or gratuities he earned."  (Doc. 25 at ¶ 72(i)).  On this point, as indicated above, because Defendants failed to provide notice as required by 29 U.S.C. § 203(m) regarding the tip-credit and use of tip pools, Defendants cannot use the tip-credit

provision and, therefore, must have paid Plaintiff at least the minimum wage and *allowed Plaintiff to keep all tips received.  See Bennett*, 2017 WL 894624, at *2.

Plaintiff seeks $200.00 related to a "tip out."  (Doc. 46 at 3 ¶ 3).  Plaintiff testified at the evidentiary hearing that Defendants required him to give ten percent (10%) of his tips to the silverware roller/barista.  (Doc. 55 at 19).  Plaintiff states that there were no paper trails for this conduct.  (*Id.* at 21:11).  Exhibit 3 shows that Plaintiff received $2,013.00 in tips.  (Doc. 54-4).  Plaintiff stated that he rounded off his request to $200.00 to make it an even number.  (Doc. 55 at 20:23).

Upon review, the Undersigned finds Plaintiff's testimony to be credible.  Accordingly, based on Plaintiff's testimony and the evidence presented at the evidentiary hearing, the Undersigned finds that Plaintiff has demonstrated by a preponderance of the evidence that he incurred **$200.00** in damages for tips he did not receive.

### iii.    *"Sidework" Performed by Plaintiff*

Plaintiff alleges that Defendants violated the FLSA by paying him a reduced hourly wage of $5.03 per hour for non-tipped "sidework."  (Doc. 25 at ¶ 72(d)).  Under the FLSA's regulations, when a tipped employee engages in a dual job that involves non-tipped duties, no tip credit can be taken for the hours of employment in the other occupation.  29 C.F.R. § 531.56(e).  The Department of Labor's ("DOL") Field Operations Handbook ("Handbook") clarifies this rule by providing:

> 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee.  For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.

U.S. Dep't. of Labor, *Field Operations Handbook*, Ch. 30d00(f)(2), (Dec. 1, 2016), http://www.dol.gov/whd/foh/FOH_Ch30.pdf.  Nevertheless, the Handbook states that "where the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties."  This Court has previously upheld the application of the "20% rule," stating that the "20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e)."  *Crate v. Q's Rest. Grp. LLC*, No. 8:13-cv-2549-T-24EAJ, 2014 WL 10556347, at *4 (M.D. Fla. May 2, 2014).  Here, the Undersigned finds that the 20% rule helps clarify the procedure for determining the amount of time Plaintiff spent performing related duties.  *See id.*  Accordingly, the Undersigned finds that no tip credit could be taken for Plaintiff's hours of employment in those related duties to the extent they exceed 20% of the hours he worked in a tipped occupation.  *See* 29 C.F.R. § 531.56(e).

Here, Plaintiff alleges that he spent time cleaning counters/computers, prepping bread, polishing glasses/silverware, carrying out trash to the outside garbage dumpster, sweeping, vacuuming, cutting lemons, preparing salads, making coffee/tea, refilling condiments, folding napkins, rolling silverware, and bussing tables.  (Doc. 25 at ¶ 72(e)).  Plaintiff further alleges that he spent in excess of 20% of his time at work for Defendants engaged in performing those non-tipped related duties.  (*Id.*).  Based on these allegations, the Undersigned finds that Plaintiff has adequately alleged that he spent in excess of 20% of his time at work for Defendants engaged in performing related duties such that no tip credit can be taken for the hours of employment in those related duties.  *See* 29 C.F.R. § 531.56(e).  Moreover, Defendants' liability is established on this ground by their default.  *See Cohan*, 309 F.R.D. at 666.

Turning to damages, Plaintiff's Motion for Final Default Judgment seeks $364.66 for Defendants' notice violations pursuant to 29 U.S.C. § 203(m) *and* the "sidework" for non-tipped duties.  (Doc. 46 at 4 ¶ 5).  As indicated above, however, the Undersigned finds that Plaintiff is entitled to $364.66 for Defendants' notice violations pursuant to 29 U.S.C. § 203(m).  Because Plaintiff is entitled to these damages based on one theory of recovery, Plaintiff is not entitled to any duplicative damages based on Defendants' violations of 29 C.F.R. § 531.56(e).

### iv.      *Home Study Training*

Plaintiff alleges that Defendants failed to pay him for home study training.  (Doc. 25 at ¶ 72(f)).  Pursuant to 29 C.F.R. § 785.11, "[w]ork not requested but suffered or permitted is work time."  Moreover, work performed away from the premises or the job site, or at home must count as hours worked if the employer knows or has reason to believe that the work is being performed.  29 C.F.R. § 785.12.

Here, Plaintiff alleges that "Defendants refused and/or failed to pay Plaintiff any wages for hours spent as part of obligatory at home study during training, which is primarily for the benefit or convenience of the Defendants."  (Doc. 25 at ¶ 72(f)).  Based on this allegation, the Undersigned finds that Plaintiff adequately alleged that he performed work at home that the employer knew or had reason to believe was being performed.  *See* 29 C.F.R. § 785.12.  Thus, any hours worked at home must count as work hours.  *See id.*

Turning to damages, Plaintiff seeks $161.00 for the home study training.  (Doc. 46 at 4 ¶ 4).  The figure is the result of the Florida minimum wage of $8.05 per hour multiplied by twenty (20) hours worked.  (*See id.*).  Plaintiff testified at the hearing that Defendant Bonifacio handed him wine lists and menus and directed Plaintiff to go home and study them.  (Doc. 55 at 27:10-11).  Plaintiff testified that he studied the wine lists and menus for four or five days

approximately four or five hours a day.  (*Id.* at 28:13-14).  Plaintiff submitted the wine list and menu to the Court as Exhibit 6, which the Court admitted into evidence.  (*See* Doc. 54-7).

Upon review, the Undersigned finds Plaintiff's testimony to be credible.  Moreover, it is clear that Defendants knew or should have known that Plaintiff was working at home on their behalf.  *See* 29 C.F.R. § 785.12.  The Undersigned further finds, therefore, that Plaintiff has shown by a preponderance of the evidence that he spent 20 hours studying wine lists and menus for Defendants.  After multiplying 20 hours times the Florida minimum wage of $8.05 per hour, the Undersigned finds that Plaintiff has incurred **$161.00** in damages due to Defendants' failure to compensate him for home study training.

### v.    *Uniform Costs and Maintenance*

The Undersigned next addresses Plaintiff's allegation that Defendants committed minimum wage violations related to his purchase and maintenance of uniforms.  (Doc. 25 at ¶ 72(g)).  On this point, the DOL's Handbook states that an employer must reimburse an employee "for uniform maintenance costs which reduce their wages below the minimum wage" or "for the cost of the uniform to the extent that the expense cuts into the minimum wage."  U.S. Dept. of Labor, *Field Operations Handbook*, Ch. 30c12(b), (e), (Dec. 1, 2016).  Here, the Undersigned finds that the DOL Handbook is instructive in this case in evaluating Plaintiff's minimum wage claims related to uniform costs and maintenance.

In his First Amended Complaint, Plaintiff alleges that "Defendants required Plaintiff to buy his own work uniforms and job accessories without being reimbursed, which further reduced his hourly wages and/or pay for training," including "requiring that uniforms be dry cleaned and/or pressed."  (Doc. 25 at ¶ 72(g)).  Based on these allegations, the Undersigned finds that Plaintiff has adequately alleged that his uniform costs and uniform maintenance reduced his

hourly wages below the minimum wage required by law.  Moreover, Defendant's liability is admitted by their default.  *See Cohan*, 309 F.R.D. at 666.

Turning to damages, Plaintiff seeks $80.60 for uniform costs and $18.99 for uniform maintenance.  (Doc. 46 at 3 ¶¶ 1-2).  At the evidentiary hearing, Plaintiff testified and provided receipts for the purchase of uniforms (Exhibit 1) and for the uniform maintenance costs (Exhibit 2), which were admitted into evidence.  (*See* Docs. 54-2 and 54-3).

As to the purchase of uniforms, Exhibit 1 provides receipts for uniforms totaling $42.31.  (Doc. 54-2).  Additionally, Plaintiff testified at the hearing that Defendants charged him $20.00 for an apron, but he was not provided with a receipt.  (Doc. 55 at 12-13).  Plaintiff also testified that he purchased a pair of shoes for $9.99, but states that he inadvertently gave the receipt to former opposing counsel and does not have an additional copy.  (*Id.*).  Upon review, the Undersigned finds Plaintiff's testimony to be credible.  Based on the evidence presented in Exhibit 1 and Plaintiff's testimony, the Undersigned finds that Plaintiff has demonstrated by a preponderance of the evidence that he incurred **$72.30** in damages for uniform costs.  Specifically, when adding the above-listed amounts together, the total is $72.30.  Although Plaintiff requested $80.60, Plaintiff has not demonstrated that he is entitled to that greater amount.

As to the uniform maintenance costs, the receipts in Exhibit 2 total $19.00.  (Doc. 54-3).  Plaintiff, however, only requested $18.99 for uniform maintenance costs.  (Doc. 46 at 3 ¶¶ 1-2).  Upon review, the Undersigned finds that Plaintiff has demonstrated by a preponderance of the evidence that he incurred **$18.99** in damages for uniform maintenance costs.

###### vi.    Liquidated Damages

The Undersigned next turns to Plaintiff's demand for liquidated damages.  (Doc. 25 at ¶ 80).  Under the FLSA, any employer found to have violated the minimum wage provisions of FLSA is liable for an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  "[L]iquidated damages are mandatory unless the employer can show that it acted in good faith and had reasonable grounds to believe that its actions did not violate the FLSA minimum wage requirement."  *Bennett*, 2017 WL 894624, at *2 n.1 (citing *Joiner v. City of Macon*, 814 F.2d 1537 (11th Cir. 1987)).  Here, due to their default, Defendants have not shown that they acted in good faith.  The Undersigned finds, therefore, that Plaintiff is entitled to an additional equal amount in liquidated damages as to Count 1.

###### vii.    Costs

Plaintiff also seeks a recovery of costs.  (Doc. 46 at 4 ¶ 9).  Pursuant to 29 U.S.C. § 216(b), in addition to any judgment awarded to Plaintiff, the Court must allow a reasonable attorney's fee to be paid by Defendants and also the costs of the action.

In his Motion for Final Default Judgment, Plaintiff seeks $450.00 in costs—$400.00 for the filing fee and $50.00 for service of process.  (Doc. 46 at 4 ¶ 9).  Plaintiff, proceeding *pro se*, did not seek attorney's fees.  (*See id.*).  Additionally, Plaintiff stated at the evidentiary hearing that he was seeking $50.00 in process server costs for a separate state court proceeding.  (Doc. 55 at 61).

Upon review, the Undersigned finds that Plaintiff has demonstrated that he incurred **$50.00** in costs pursuant to 29 U.S.C. § 216(b) for the service of process costs related to the present action.  The Undersigned specifically credits Plaintiff's testimony that he paid $50.00 for

service of process and the receipt from Exhibit 10, which was admitted into evidence.  (Doc. 54-11).

The Undersigned finds, however, that Plaintiff has not shown that he is entitled to the filing fee or the service of process costs from the state court proceeding.  Plaintiff acknowledged at the evidentiary hearing that the filing fee had been waived but nevertheless stated that he thought that the Court should be reimbursed.  (Doc. 55 at 60).  Plaintiff is proceeding *in forma pauperis*, which is without prepayment of fees, including the filing fee.  (*See* Doc. 4).  Plaintiff is not entitled to the filing fee because that fee was waived.  Additionally, Plaintiff has not demonstrated that he is entitled to the $50.00 service of process costs from the state court proceedings.  Plaintiff has not cited any authority or otherwise demonstrated that those costs are recoverable in the present federal court action.  Thus, the Undersigned declines to find that Plaintiff is entitled to such relief.

### 4.      Conclusion as to Count 1

In sum, the Undersigned finds that Plaintiff incurred **$816.95** in damages for unpaid wages.  This total includes:  **$364.66** for Defendants' failure to comply with the notice provisions of 29 U.S.C. § 203(m), **$200.00** for tips Plaintiff did not receive, **$161.00** for home study training, **$72.30** for uniform costs, and **$18.99** for uniform maintenance costs.  Additionally, Plaintiff incurred **$50.00** in costs.  Accordingly, the Undersigned finds that Plaintiff's First Amended Complaint and the evidence presented at the hearing support the entry of default judgment against Defendants The Duke, LLC and Fabio Bonifacio and in favor of Plaintiff in the amount of **$816.95** for unpaid wages, an additional equal amount of **$816.95** in liquidated damages, and **$50.00** in costs as to Count 1.

**B.      FLSA Retaliation (Count 2)**

In Count 2 of his First Amended Complaint, Plaintiff alleges retaliation in violation of 29 U.S.C. § 215(a)(3).  (Doc. 25 at ¶¶ 82-97).  The FLSA provides protections against retaliation for persons asserting their rights under the statute.  *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342 (11th Cir. 2000) (citing 29 U.S.C. § 215(a)(3)).  A prima facie case of FLSA retaliation requires the plaintiff to demonstrate that:  (1) he engaged in activity protected under the Act, (2) he subsequently suffered adverse action by the employer, and (3) a causal connection existed between the employee's activity and the adverse action.  *Wolf*, 200 F.3d at 1342-43; *Roth v. ABCW, LLC*, No. 2:14-cv-227-FTM-29CM, 2016 WL 6994178, at *2 (M.D. Fla. Nov. 30, 2016).

In this case, Plaintiff alleges that he asserted his rights to Defendants under the FLSA on two occasions on February 15, 2016 and February 28, 2016.  (Doc. 25 at ¶ 85).  After he complained the first time, Plaintiff alleges that other employees of Defendants informed Fabio Bonifacio that Plaintiff had previously brought FLSA actions against other restaurants.  (*Id.* at ¶ 86).  Plaintiff alleges that Defendants fired him after he attempted to enforce his rights under the FLSA.  (*Id.* at ¶ 91).  Additionally, Plaintiff alleges that Defendants fired him "because Defendants learned of the fact that Plaintiff had previously filed FLSA complaints against his restaurant employers."  (*Id.*).

Upon review, the Undersigned finds that Plaintiff has adequately alleged a retaliation claim under the FLSA.  *See Wolf*, 200 F.3d at 1342-43.  First, Plaintiff alleged that he engaged in activity protected under the Act because he alleges that he attempted to enforce his rights under the FLSA.  (Doc. 25 at ¶ 85).  Second, Plaintiff alleged that he suffered adverse action by the employer because Plaintiff alleges that he was fired by Defendants.  (*Id.* at ¶ 86).  Finally, Plaintiff alleged a causal connection between his activity and the adverse action because Plaintiff

alleges that he was fired after he attempted to enforce his rights.  (*Id.* at ¶ 91).  Due to Defendants' default, the Undersigned finds that these allegations must be accepted as true.  *See Cohan*, 309 F.R.D. at 666.  Therefore, Plaintiff has demonstrated that Defendants are liable for retaliation under the FLSA.

Turning to damages, Plaintiff seeks $5,206.10 in lost direct wages, (Doc. 46 at 4 ¶ 6), and $18,558.80 in lost tips, (*id.* at ¶ 7).  At the evidentiary hearing, Plaintiff testified, explaining his calculations for these damages, and also submitted evidence.  (Doc. 55 at 38).

For lost direct wages, Plaintiff testified that he was receiving $5.03 per hour for the hours he worked.  (*Id.* at 38:21).  Plaintiff testified that he was working 29 hours per week.  (*Id.* at 38:21-22).  Plaintiff testified that there are 4.3 weeks in a month.  (*Id.* at 38:22-23).  At the time of the hearing, Plaintiff stated that he had been out of work for 9 months.  (*Id.* at 38:23-24).  Plaintiff stated that the total amount of his damages after multiplying these figures together equals $5,206.10.  (*Id.* at 38:25).

For lost tips, Plaintiff testified that his last paycheck shows that he was averaging $520.00 per week in tips.  (*Id.* at 39:1-2 (citing Exhibit 3, Doc. 54-4)).  Plaintiff testified that there are 4.3 weeks in a month and that he had been out of work for 9 months since being fired by Defendants.  (*Id.* at 39:7-8).  Plaintiff stated that the total amount of his damages after multiplying these figures together equals $18,558.80.  (*See id.*).

Additionally, Plaintiff testified that he had been unemployed since the time he worked for Defendants.  (*Id.* at 44:7-8).  Plaintiff testified that he had been actively looking for work.  (*Id.* at 44:9).  Nevertheless, Plaintiff testified that a prior felony conviction prevented him from being hired by the Fresh Market.  (*Id.* at 44-45).

Upon review, the Undersigned finds Plaintiff's testimony to be credible.  As to lost direct wages, the Undersigned calculates Plaintiff's lost direct wages to be $5,645.17 ($5.03 per hour x 29 hours/week x 4.3 weeks/month x 9 months).  Plaintiff, however, only seeks $5,206.10.  (Doc. 46 at 4 ¶ 6).  As to lost tips, the Undersigned calculates Plaintiff's lost tips to be $20,124.00 ($520 per week x 4.3 weeks/month x 9 months).  Plaintiff, however, only seeks $18,558.80.  (*Id.* at ¶ 7).  In total, based on Plaintiff's testimony and the evidence presented at the hearing, the Undersigned finds that Plaintiff has demonstrated by a preponderance of the evidence that he incurred damages for lost wages from FLSA retaliation in the amount of **$23,764.90** ($5,206.10 + $18,558.80).  Specifically, for both of these measures, the Undersigned finds that Plaintiff is only entitled to the amount of damages he seeks for lost direct wages and lost tips, but no more.  Moreover, pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to an additional equal amount – **$23,764.90 –** in liquidated damages.

Nevertheless, the Undersigned specifically finds that Plaintiff has not demonstrated by a preponderance of the evidence that he has suffered any additional damages related to lost wages and tips for the time period after the filing of his Motion (Doc. 46) on December 5, 2016.  Instead, it appears that Plaintiff's past felony conviction is what has prevented Plaintiff from being employed at least as of the filing of his Motion.  (*See* Doc. 55 at 44-45).

In sum, Plaintiff's First Amended Complaint and the evidence presented at the hearing support the entry of default judgment against Defendants The Duke, LLC and Fabio Bonifacio and in favor of Plaintiff in the amount of **$23,764.90** for FLSA retaliation and an additional equal amount of **$23,764.90** in liquidated damages as to Count 2.

### C.   Florida Minimum Wage Violations (Count 3) and Florida Retaliation Violations (Count 4)

Plaintiff did not demand damages based on Count 3 in his First Amended Complaint, in his Motion for Final Default Judgment, or at the evidentiary hearing.  Moreover, the Undersigned determined that the relief Plaintiff seeks related to minimum wage violations is available via Count 1.  Because Plaintiff is not entitled to a duplicative award of damages, the Undersigned finds that that evaluating Plaintiff's claims under Count 3 is unnecessary.

Similarly, while Plaintiff stated at the evidentiary hearing that he was, in part, seeking damages based on Count 4 (Doc. 55 at 40), the Undersigned determined that the relief Plaintiff seeks related to retaliation violations is available via Count 2.  Because Plaintiff is not entitled to a duplicative award of damages, the Undersigned also finds that that evaluating Plaintiff's claims under Count 4 is unnecessary.

### D.   Defamation (Count 5), False Imprisonment (Count 6), and False Arrest (Count 7)

The final set of damages Plaintiff seeks results from his alleged "unlawful arrest."  (Doc. 46 at 4 ¶ 8).  At the evidentiary hearing, Plaintiff testified that he was seeking these damages pursuant to Counts 5-7.  (Doc. 55 at 71:19-20).

As an initial matter, a review of Plaintiff's First Amended Complaint shows that the costs associated with Plaintiff's alleged unlawful arrest are not applicable to Plaintiff's claim for Defamation (Count 5).  Plaintiff's Defamation claim does not have any specific allegations related to an unlawful arrest.  (Doc. 25 at ¶¶ 117-123).  The Undersigned finds, therefore, that Plaintiff is not entitled to an award of damages related to his "unlawful arrest" based on his defamation claim.  Moreover, because Plaintiff has not proven any separate damages relating to his defamation claim, he is not entitled to any.

The question, then, is whether Plaintiff has adequately stated a claim for False Imprisonment (Count 6) and/or False Arrest (Count 7).  Under Florida law, the elements for false imprisonment and false arrest are substantially similar, if not identical.  *See Eiras v. Florida*, No. 3:16-CV-231-J-34PDB, 2017 WL 897305, at *7 n.15 (M.D. Fla. Mar. 7, 2017) (noting a split between the District Courts of Appeal in Florida and indicating that false imprisonment and false arrest are either (1) considered the same tort or (2) that false arrest is considered to be one of several methods of committing false imprisonment).  For purposes of review here, the distinction, if any, appears to be immaterial.  *See id.*

The elements of false imprisonment and/or false arrest include:  (1) the unlawful detention and deprivation of liberty of a person, (2) against that person's will, (3) without legal authority or "color of authority," and (4) which is unreasonable and unwarranted under the circumstances.  *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006).  Additionally, under Florida law, a private party must "instigate" the arrest for that private party to have liability in causing law enforcement to arrest someone.  *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th DCA 2015).  Specifically, the defendant must have taken an active role in encouraging or procuring the wrongful arrest.  *Id.*  Probable cause may be raised by defendants as an affirmative defense.  *Rivers v. Dillards Dep't Store, Inc.*, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997) (citation omitted).  Moreover, a privilege exists as a matter of law to engage in reckless or even outrageous conduct if sufficient evidence exists to show that the defendants did no more than assert legal rights in a legally permissible way.  *Id.* (citations and quotation marks omitted).

Upon review, it appears that Plaintiff has properly stated a claim for false imprisonment and/or false arrest under Florida law.  *See Montejo*, 935 So. 2d at 1268.

First, Plaintiff alleges that he was restrained by Defendants and eventually arrested by the police because he was asserting his rights under the FLSA, Florida Labor Laws, and the Florida Constitution.  (Doc. 25 at ¶¶ 125-26, 132).  The Undersigned finds this allegation is sufficient to establish that Defendants unlawfully detained Plaintiff and deprived him of his liberty.  *See Montejo*, 935 So. 2d at 1268.

Second, Plaintiff specifically alleges that he was restrained by Defendants against his will.  (Doc. 25 at ¶ 132).  This allegation sufficiently establishes that the deprivation was against Plaintiff's will.  *See Montejo*, 935 So. 2d at 1268.

Third, Plaintiff alleges that Defendants did not have the authority to call the police simply because he was exercising his rights.  (Doc. 25 at ¶ 127).  The Undersigned finds that this allegation sufficiently establishes that Defendants were acting without legal authority or color of authority.  *See Montejo*, 935 So. 2d at 1268.

Fourth, Plaintiff alleges that Defendants' actions were unreasonable because he was exercising his rights.  (Doc. 25 at ¶ 126).  The Undersigned finds that this allegation is sufficient to establish that Defendants' conduct was unreasonable and unwarranted under the circumstances.  *See Montejo*, 935 So. 2d at 1268.

Moreover, Plaintiff alleges that he would not have been arrested but for the phone call Defendants made to the police.  (Doc. 25 at ¶ 133).  Based on these allegations, Plaintiff has adequately alleged that Defendants "instigated" his wrongful arrest.  *See Harder*, 174 So. 3d at 530.  Furthermore, due to their default, Defendants have not shown that probable cause existed or that a privilege existed as to their conduct.  *See Rivers*, 698 So. 2d at 1331.

Based on Plaintiff's allegations – accepted as true based on Defendants' default – Plaintiff has sufficiently alleged a claim for false imprisonment and/or false arrest under Florida

law.  *Montejo*, 935 So. 2d at 1268.  Moreover, Defendants' liability is established by their

default.  *See Cohan*, 309 F.R.D. at 666.

Turning to damages, Plaintiff's Motion for Final Default Judgment sought $210.00 as a

result of his unlawful arrest.  (Doc. 46 at 4 ¶ 8).  Plaintiff clarified the amount he was seeking at

the evidentiary hearing.  (Doc. 55 at 56).  In total, Plaintiff seeks $290.00 for his unlawful arrest.

(*See id.* at 56).

Plaintiff testified and provided receipts of expenses at the hearing.  (*Id.*).  The receipts

provided by Plaintiff were admitted into evidence as composite Exhibit 9.  (*See* Doc. 54-10).

Plaintiff testified that he incurred $150.00 for a cash bond.  (Doc. 55 at 56:8).  A receipt showing

this charge is part of Exhibit 9.  (Doc. 54-10 at 1).  Plaintiff also testified that he was charged a

total of $90.00 by the Lee County Sheriff's Office.  (*See* Doc. 55 at 56:12-13).  Plaintiff provided

two receipts in Exhibit 9 showing charges of $30.00 for a booking fee (Doc. 54-10 at 3), and

other costs totaling $60.00 (Doc. 54-10 at 5).  Additionally, Plaintiff testified that he spent

$50.00 for a taxi to get home from jail.  (Doc. 55 at 56:17).  Plaintiff testified that he does not

have a car and that the buses do not run at 2:00 a.m.—the time he was released from jail.  (*Id.* at

57-58).  Plaintiff testified, however, that he did not have a copy of the receipt for the

transportation costs.  (*Id.* at 57:20).

Upon review, the Undersigned finds that Plaintiff has demonstrated by a preponderance

of the evidence that he sustained damages resulting from the false imprisonment and/or false

arrest in the amount of **$290.00**.  Specifically, the evidence presented at the hearing in Exhibit 9

shows damages amounting to $240.00.  (Doc. 54-10).  Moreover, the Undersigned finds

Plaintiff's testimony to be credible regarding the transportation costs of $50.00.  Based on the

time Plaintiff testified he was released from jail and Plaintiff's testimony that he does not own a

car, it is reasonable to believe that Plaintiff incurred a $50.00 charge for a taxi. Thus, Plaintiff has shown total costs from the unlawful arrest to be $290.00.

In sum, Plaintiff's First Amended Complaint and the evidence presented at the hearing support the entry of default judgment against Defendants The Duke, LLC and Fabio Bonifacio and in favor of Plaintiff in the amount of **$290.00** for false imprisonment and/or false arrest as to Counts 6-7.

## IV.   Conclusion

For the reasons explained above, the Undersigned hereby **RESPECTFULLY RECOMMENDS**:

1) That Plaintiff's Motion for Final Default Judgment (Doc. 46) against Defendants The Duke, LLC and Fabio Bonifacio be **GRANTED IN PART** and **DENIED IN PART**.

2) That default judgment be entered against Defendants The Duke, LLC and Fabio Bonifacio and in favor of Plaintiff Edward Santana in the amount of **$816.95** in unpaid minimum wages, an additional equal amount of **$816.95** in liquidated damages, and **$50.00** in costs as to Count 1.

3) That default judgment be entered against Defendants The Duke, LLC and Fabio Bonifacio and in favor of Plaintiff Edward Santana in the amount of **$23,764.90** for FLSA retaliation and an additional equal amount of **$23,764.90** in liquidated damages as to Count 2.

4) That default judgment be entered against Defendants The Duke, LLC and Fabio Bonifacio and in favor of Plaintiff Edward Santana in the amount of **$290.00** for false imprisonment and/or false arrest as to Counts 6-7.

5) That Plaintiff's Motion be denied in all other respects.

Respectfully recommended in Chambers in Fort Myers, Florida on May 16, 2017.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

### **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties